UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEMEDICA CELL TECHNOLOGIES, INC., a Nevada corporation,<br><br>  Plaintiff,<br><br>v.<br><br>ABDULAZIZ BIN MOHAMMED, a natural person; JOSEPH ZIA, a natural person; and DOES 2-10,<br><br>  Defendants. | Case No.: 3:19-cv-01214-WQH-BLM<br><br>**ORDER** |

HAYES, Judge:

    The matter pending before the Court is the Motion to Dismiss filed by Defendant Joseph Zia. (ECF No. 15).

**I.   PROCEDURAL BACKGROUND**

    On June 28, 2019, Plaintiff Stemedica Cell Technologies, Inc. initiated this action by filing a Complaint against Defendants Abdulaziz Bin Mohammed and DOES 1-10. (ECF No. 1).

    On January 22, 2020, Plaintiff filed an Amended Complaint against Defendants Abdulaziz Bin Mohammed, Joseph Zia, and DOES 2-10. (ECF No. 7). Plaintiff alleges

that Defendant Mohammed and his agent Defendant Zia violated a Common Stock Purchase Agreement (the "CSPA") by failing to purchase 27,000,000 shares of Plaintiff's common stock. *See id*. at 3-6. Plaintiff brings the following nine causes of action: (1) breach of written contact against Defendant Mohammed; (2) breach of implied contact against Defendant Mohammed; (3) breach of implied covenant of good faith and fair dealing against Defendant Mohammed; (4) intentional misrepresentation against Defendants Mohammed and Zia; (5) promissory fraud against Defendants Mohammed and Zia; (6) promissory estoppel against Defendants Mohammed and Zia; (7) negligent misrepresentation against Defendants Mohammed and Zia; (8) fraud in the purchase of securities pursuant to 17 C.F.R. §240.10b-5 against Defendants Mohammed and Zia; and (9) right to attach order and a writ of attachment against Defendant Mohammed. *See id*. at 6-12. Plaintiff seeks general, special, and exemplary damages; interest; attorneys' fees and costs; "a right to attach order and writ of attachment in the amount of $270,000,000.00, plus interest at the rate of ten percent (10%) per annum until paid …"; and "other and further relief as this Court may deem just and proper." *Id*. at 12-13.

On April 17, 2020, Defendant Zia filed a Motion to Dismiss Plaintiff's fourth, fifth, sixth, seventh, and eighth causes of action for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 15).[1] On May 12, 2020, Plaintiff filed a Response in opposition. (ECF No. 16).[2] On May 19, 2020 Defendant Zia filed a Reply (ECF No. 17) and an Objection (ECF No. 18).[3]

**II.   ALLEGATIONS OF THE AMENDED COMPLAINT**

On March 12, 2015, Plaintiff and Defendant Mohammed entered into a CSPA. *See* ECF No. 7 at 3. The CSPA provided, in relevant part,

---

[1] Defendant Zia requests the Court to take judicial notice of Exhibits 1, 2, and 3 to the Declaration of Defendant Zia. *See* ECF No. 15-2. The Court has not considered these exhibits in resolving this Order.
[2] Plaintiff requests the Court to take judicial notice of Exhibits 1 and 2 to Plaintiff's Response in opposition. *See* ECF No. 16-1. The Court has not considered these exhibits in resolving this Order.
[3] Defendant Zia objects to Plaintiff's request for judicial notice (ECF No. 16-1). *See* ECF No. 18. The Court has not considered Plaintiff's exhibits in resolving this Order.

>    (a) for [Plaintiff] to sell to [Defendant Mohammed] and [Defendant Mohammed] to buy from [Plaintiff] 27,000,000 shares of common stock in [Plaintiff] at a purchase price of ten dollars ($10.00) per share; and (b) for a closing to take place at [Plaintiff]'s offices in San Diego.

*Id*. at 3-4.

>    The CSPA contained representations and warranties on behalf of each party. For his part, [Defendant Mohammed] represented and warranted that he had substantial experience in evaluating and investing in private placement transactions of securities in companies similar to [Plaintiff], was capable of evaluating the merits and risks of his investment in [Plaintiff], understood and acknowledged that his investment was highly speculative and involved substantial risks, could bear the economic risk of his investment, was able without impairing his financial condition to suffer a complete loss of his investment, had had all access to all data he thought necessary in order to commit to the investment memorialized in the CSPA and was satisfied with it, and was an "accredited investor" within the meaning of Regulation D, Rule 501(a) promulgated by the U.S. Securities and Exchange Commission.

*Id*. at 4.

"The CSPA supplied as the rule of decision in any after-arising dispute the substantive law of the State of California, without regard to conflicts of law principles, and provided that this Court would have exclusive jurisdiction of any dispute arising out of or related to the CSPA." *Id*. "The CSPA also included a clause stating that delay in exercising any remedies for breach or default could not be construed as an impairment of the right to pursue those remedies at a later time." *Id*. "The CSPA forbade any amendments to its terms except via a mutually-signed writing, and expressly prohibited an effort to 'go outside' the CSPA by positing any purported amendment (whether oral, emailed, or otherwise) that did not satisfy that clause." *Id*.

>    Contemporaneously with the execution of the CSPA, [Defendant Mohammed] signed a document entitled "letter of confirmation & authorization," which appended wire instructions for the transfer of the first installment of the cash owing from [Defendant Mohammed], in the amount of $180 million, from [Defendant Mohammed] to [Plaintiff]. This document identified [Defendant] Zia as [Defendant Mohammed]'s agent for purposes of the transfer. The attached wire transfer instructions listed as the originating

bank a Bank of America branch on Mia Sorrento Place. [Defendants] Zia and [Mohammed] both signed this document.

On [Defendant Mohammed]'s behalf, [Defendant] Zia delivered a letter to [Plaintiff] promising the wiring of the cash, on July 2, 2015. In this letter, [Defendant] Zia acknowledged the establishment of a limited liability company for the purpose of holding [Defendant Mohammed]'s $270,000,000.00 for release to [Plaintiff] pending satisfaction of certain "contingencies." The "contingencies" listed in [Defendant] Zia's letter, however, were and are parol evidence and an invalid effort to renegotiate the terms of the CSPA (whose § 6.9 embodies the parties' agreement that the CSPA constituted the "full and entire understanding and agreement between the parties").

Afterward, [Defendant Mohammed] did not perform. He proffered excuses for not doing so. These included health problems (a pair of heart attacks) and family issues (the illness and death of his father). The heart attacks, he said, required his hospitalization and put him out of commission for a period of months. Another excuse was delay [Defendant Mohammed] was experiencing in receiving an inheritance from his father's estate.

In multiple telephone conversations with members of [Plaintiff]'s board of directors and management, however, [Defendant Mohammed] repeatedly affirmed his intent to honor the CSPA. [Defendant] Zia, his agent, did the same. In the meanwhile, on information and belief, [Defendant Mohammed] brought cash into the U.S. by transferring it to a Citibank account in Beverly Hills from a Barclays Bank account in London. Although he could have used some or all of this cash in order to honor his commitment under the CSPA, he did not do so.

Minutes of [Plaintiff]'s directors' meetings reflect [Plaintiff]'s contemporaneous reliance on [Defendant Mohammed]'s commitment to [Plaintiff] as memorialized in the CSPA. [Defendant Mohammed] also participated via telephone in at least two board meetings, in which he swore to Allah that he would honor the CSPA within days afterward. The minutes of the board meeting held August 25, 2016, reflect [Defendant Mohammed]'s re-affirmation of his commitment to invest the promised cash.

As late as April 11, 2016, August 25, 2016, and February 2, 2017, among other times, [Defendant Mohammed] reaffirmed to [Plaintiff] his commitment to honor the CSPA, in statements which [Plaintiff] duly recorded in the

>minutes of meetings of its directors duly held in San Diego on or about those dates.

*Id*. at 4-6.

"In the end, neither [Defendant Mohammed] nor [Defendant] Zia ever performed the transfer of any of the monies …." *Id*. at 6. "Nor did either ever disclaim [Defendant Mohammed]'s duties under the CSPA or say that [Defendant Mohammed] would not be performing as promised." *Id*.

"[Plaintiff], however, relied on [Defendants Mohammed]'s and Zia's promises at face value, and made them known to others (including persons who invested in [Plaintiff] in justifiable reliance on [Defendant Mohammed]'s doing the same)." *Id*. "At all times, [Plaintiff] remained ready and able to perform on its own part, consistent with California law." *Id*.

## III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted …." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief …." Fed. R. Civ. P. 8(a)(2). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotation marks and citation omitted). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (citation omitted).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)) (alteration in original). When considering a motion to dismiss, a court

must accept as true all "well-pleaded factual allegations …." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden St. Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

**IV.    DISCUSSION**

Defendant Zia contends that Plaintiff's fourth, fifth, sixth, seventh, and eighth claims are barred by statutes of limitations.  Defendant Zia contends that the statute of limitations for intentional misrepresentation (fourth claim), promissory fraud (fifth claim), promissory estoppel (sixth claim), and negligent misrepresentation (seventh claim) is three years.  Defendant Zia contends that the statute of limitations for fraud in the purchase of securities pursuant to 17 C.F.R. §240.10b-5 (eighth claim) is two years after the discovery of facts constituting the violation or five years after the violation.  Defendant Zia contends that Plaintiff's claims accrued in March 2015, July 2015, or August 2016.

Plaintiff contends that intentional misrepresentation (fourth claim), promissory fraud (fifth claim), and negligent misrepresentation (seventh claim) are subject to a three-year statute of limitations.  Plaintiff contends that promissory estoppel (sixth claim) and fraud in the purchase of securities pursuant to 17 C.F.R. §240.10b-5 (eighth claim) are subject to a two-year statute of limitations.  Plaintiff contends that its claims against Defendant Zia are not time-barred because of the discovery rule, fraudulent concealment, continuous accrual, continuing violation, and conspiracy.  Plaintiff concedes that it cannot carry its burden of proving belated discovery on the face of the Amended Complaint because the Amended Complaint fails to allege when Plaintiff discovered Defendant Zia's deception.  Plaintiff contends that it could remedy the omission through amendment if granted leave by the Court.  Plaintiff contends that the accrual of its claims should be delayed until 2019 because

Defendant Zia fraudulently concealed Defendant Mohammed's intent to defraud. Plaintiff contends that its claims accrued continuously until 2019 because Defendant Zia's deception is ongoing. Plaintiff contends that the continuing violation doctrine applies because Plaintiff attempted to resolve the dispute before commencing litigation. Plaintiff contends that the limitations period begins to run once the last overt actual pursuant to the civil conspiracy has been completed. Plaintiff contends that the earliest accrual date for its claims against Defendant Zia is February 2017 when Defendant Zia made his final false promise to Plaintiff concerning Defendant Mohammed's intent to perform.

"If the running of the statute is apparent on the face of the complaint, the defense may be raised by a motion to dismiss." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (citations omitted). This is true even though expiration of the limitations period is an affirmative defense, because Federal Rule of Civil Procedure 9(f) "makes averments of time and place material for the purposes of testing the sufficiency of a complaint." *Suckow Borax Mines Consol. v. Borax Consol.*, 185 F.2d 196, 204 (9th Cir. 1951). "When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon*, 614 F.2d at 682 (citation omitted). In contrast, where the statute of limitations question turns on factual issues that may be disputed, the question is more appropriately addressed at a later stage of the proceeding. *See id*. "A defendant raising the statute of limitations as an affirmative defense has the burden of proving the action is time barred." *Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1995) (citations omitted). "A federal court sitting in diversity applies the substantive law of the state, including the state's statute of limitations." *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011) (citation omitted).

"To determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the cause of action, i.e., the gravamen of the cause of action." *Hensler v. City of Glendale*, 8 Cal. 4th 1, 22 (1994) (internal quotation marks and citations omitted). In other words, "the nature of the right sued upon and not the form of

action nor the relief demanded determines the applicability of the statute of limitations under our code." *Maguire v. Hibernia Sav. & Loan Soc.*, 23 Cal. 2d 719, 733 (1944) (citations omitted).

The California Code of Civil Procedure states that "[a]n action for relief on the ground of fraud or mistake" is subject to a three-year statute of limitations. Cal. Civ. Proc. Code § 338(d). Section 338(d) "is comprehensive and applies if fraud or mistake is the basis of the legal injury (the ground of the action) ... regardless of whether the complaint seeks legal or equitable relief or pleads a cause of action in tort or contract." *Hatch v. Collins*, 225 Cal. App. 3d 1104, 1110 (Ct. App. 1990) (alteration in original) (internal quotation marks and citations omitted). Plaintiff's intentional misrepresentation, promissory fraud, promissory estoppel, and negligent misrepresentation claims are subject to a three-year statute of limitations. *See e.g.*, *R Power Biofuels, LLC v. Chemex LLC*, No. 16-CV-00716-LHK, 2016 WL 6663002, at *12 (N.D. Cal. Nov. 11, 2016) ("In California the statute of limitations for intentional misrepresentation is three years…. [W]here the essence of the negligent misrepresentation cause of action is 'deceit,' a three-year statute of limitations applies…. Accordingly, the three-year statute of limitations applies to the negligent and intentional misrepresentation claims."); *Wright v. Old Gringo Inc.*, No. 17-cv-1996-BAS-MSB, 2018 WL 6568199, at *8, 10 (S.D. Cal. Dec. 13, 2018) ("Promissory fraud is a species of fraud for which the misrepresentation element is premised on the defendant's alleged making of a promise while also lacking an intent to perform…. [C]ourts apply the three-year statute of limitations to negligent misrepresentation claims and contract-related claims, including specific performance, unjust enrichment, and promissory estoppel, when the gravamen of the claims is a defendant's alleged fraud."). The California Code of Civil Procedure further states that "[t]he cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Cal. Civ. Proc. Code § 338(d).

17 C.F.R. § 240.10b-5 states that

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>> (a) To employ any device, scheme, or artifice to defraud,
>> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.  28 U.S.C. § 1658(b) states that

> (b) Notwithstanding subsection (a), a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of--
>> (1) 2 years after the discovery of the facts constituting the violation; or
>> (2) 5 years after such violation.

28 U.S.C. § 1658(b).  The Supreme Court has "conclude[d] that the limitations period in § 1658(b)(1) begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have discover[ed] the facts constituting the violation—whichever comes first." *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010) (second alteration in original) (internal quotation marks omitted).

The Amended Complaint alleges that Defendant Mohammed and Plaintiff "entered into" the CSPA on March 12, 2015.  (ECF No. 7 at 3).  The Amended Complaint alleges that "[c]ontemporaneously with the execution of the CSPA, [Defendant Mohammed] signed a document entitled 'letter of confirmation & authorization,' which appended wire instructions for the transfer of the first installment of the cash owing from [Defendant Mohammed], in the amount of $180 million, from [Defendant Mohammed] to [Plaintiff]." *Id*. at 4.  The Amended Complaint alleges that "[t]his document identified [Defendant] Zia as [Defendant Mohammed]'s agent for purposes of the transfer." *Id*. at 4-5.  The Amended

Complaint alleges that Defendants "Zia and [Mohammed] both signed this document." *Id*. at 5.

The Amended Complaint alleges that, "[o]n [Defendant Mohammed]'s behalf, [Defendant] Zia delivered a letter to [Plaintiff] promising the wiring of the cash, on July 2, 2015." *Id*. The Amended Complaint alleges that "[i]n this letter, [Defendant] Zia acknowledged the establishment of a limited liability company for the purpose of holding [Defendant Mohammed]'s $270,000,000.00 for release to [Plaintiff] pending satisfaction of certain 'contingencies.'" *Id*.

On June 28, 2019, Plaintiff filed the original Complaint against Defendants Mohammed and DOES 1-10. *See* ECF No. 1. On January 22, 2020, Plaintiff filed the Amended Complaint against Defendants Mohammed, Zia, and DOES 2-10. *See* ECF No. 7. The Court finds that Plaintiff's intentional misrepresentation (fourth claim), promissory fraud (fifth claim), promissory estoppel (sixth claim), negligent misrepresentation (seventh claim), and fraud in the purchase of securities claim (eighth claim) claims against Defendant Zia are untimely because the events of March 12, 2015 and July 2, 2015 as alleged in the Complaint are more than four years prior to the filing of action against Defendant Zia.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) "requires ... an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks and citation omitted). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation and internal quotations omitted).

> Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged…. [A] plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false.

10

3:19-cv-01214-WQH-BLM

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (alteration in original) (emphasis, internal quotation marks, and citations omitted).

> In this case, the Amended Complaint alleges that
>
> In multiple telephone conversations with members of [Plaintiff]'s board of directors and management, however, [Defendant Mohammed] repeatedly affirmed his intent to honor the CSPA. [Defendant] Zia, his agent, did the same.
>
> As late as April 11, 2016, August 25, 2016, and February 2, 2017, among other times, [Defendant Mohammed] reaffirmed to [Plaintiff] his commitment to honor the CSPA, in statements which [Plaintiff] duly recorded in the minutes of meetings of its directors duly held in San Diego on or about those dates.

(ECF No. 7 at 5-6).

The Amended Complaint fails to allege facts to support a fraud claim within the statute of limitations. The Court finds that Plaintiff's allegations regarding Defendant Zia's conduct after July 2, 2015 fail to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Court further finds that Plaintiff's contentions fail to allege facts that would support the application of the discovery rule, fraudulent concealment, continuous accrual, continuing violation, and conspiracy fail to "state with particularity the circumstances constituting fraud or mistake." *Id*.

The Court concludes that Plaintiff's fourth, fifth, sixth, seventh, and eighth claims against Defendant Zia fail to state claims upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff's fourth, fifth, sixth, seventh, and eighth claims are dismissed without prejudice.[4]

---

[4] The Court does not rule on whether Plaintiff's claims against Defendant Zia are barred by the economic loss rule or otherwise fail to state claims upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## V. CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss filed by Defendant Joseph Zia (ECF No. 15) is GRANTED. Plaintiff's Amended Complaint is DISMISSED without prejudice. Any motion for leave to file an amended pleading must be filed within 30 days of this Order.

Dated: June 25, 2020

*William Q. Hayes*
Hon. William Q. Hayes
United States District Court