UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEMEDICA CELL TECHNOLOGIES, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>ABDULAZIZ BIN MOHAMMED, a natural person; JOSEPH ZIA, a natural person; and DOES 2-10,<br><br>Defendants. | Case No.: 3:19-cv-01214-WQH-BLM<br><br>**ORDER** |

HAYES, Judge:

The matter pending before the Court is the Motion for an Order Approving Alternative Means for Service of Summons as to Defendant Abdulaziz Bin Mohammed filed by Plaintiff Stemedica Cell Technologies, Inc. (ECF No. 19).

**I.   PROCEDURAL BACKGROUND**

On June 28, 2019, Plaintiff Stemedica Cell Technologies, Inc. initiated this action by filing a Complaint against Defendants Abdulaziz Bin Mohammed and DOES 1-10. (ECF No. 1).

On January 22, 2020, Plaintiff filed an Amended Complaint against Defendants Abdulaziz Bin Mohammed, Joseph Zia, and DOES 2-10. (ECF No. 7). Plaintiff alleges that Defendant Mohammed and his agent Defendant Zia violated a Common Stock Purchase Agreement by failing to purchase 27,000,000 shares of Plaintiff's common stock. *See id*. at 3-6. Plaintiff brings the following nine causes of action: (1) breach of written contact against Defendant Mohammed; (2) breach of implied contact against Defendant Mohammed; (3) breach of implied covenant of good faith and fair dealing against Defendant Mohammed; (4) intentional misrepresentation against Defendants Mohammed and Zia; (5) promissory fraud against Defendants Mohammed and Zia; (6) promissory estoppel against Defendants Mohammed and Zia; (7) negligent misrepresentation against Defendants Mohammed and Zia; (8) fraud in the purchase of securities pursuant to 17 C.F.R. §240.10b-5 against Defendants Mohammed and Zia; and (9) right to attach order and a writ of attachment against Defendant Mohammed. *See id*. at 6-12. Plaintiff seeks general, special, and exemplary damages; interest; attorneys' fees and costs; "a right to attach order and writ of attachment in the amount of $270,000,000.00, plus interest at the rate of ten percent (10%) per annum until paid"; and "other and further relief as this Court may deem just and proper." *Id*. at 12-13.

On April 17, 2020, Defendant Zia filed a Motion to Dismiss of Plaintiff's fourth, fifth, sixth, seventh, and eighth causes of action for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 15).

On May 26, 2020, Plaintiff filed a Motion for an Order Approving Alternative Means for Service of Summons as to Defendant Mohammed. (ECF No. 19).

On June 25, 2020, the Court granted Defendant Zia's Motion to Dismiss (ECF No. 15). (ECF No. 21).

## II.   DISCUSSION

Plaintiff requests that "[t]he Court … order service on [Defendant Mohammed] effected by [Plaintiff]'s certified mailing and emailing of the summons and complaint to him on February 21 and May 22, respectively." (ECF No. 19-1 at 6). Plaintiff asserts that

Defendant Mohammed is "a … Saudi national who fled the United States for Saudi Arabia last September and has not returned." *Id*. at 1.  Plaintiff asserts that

> [o]n February 21, 2020, [Plaintiff] mailed the civil cover sheet, summons and first amended complaint to [Defendant Mohammed] by certified mail, using a post office box which is associated with him in Saudi Arabia. [Plaintiff] did not receive a return receipt from [Defendant Mohammed] afterward.

*Id*. at 3.  Plaintiff asserts that

> on March 13, attorney Sloane privately provided [Plaintiff] with this email address for [Defendant Mohammed]: abdulaziz.m.2@aramco.com. This email address supplemented two other email addresses previously given to [Plaintiff] by [Defendant] Zia, i.e., amohammed@gmail.com, and a.mohammed@yahoo.com.

*Id*. at 4-5.  Plaintiff asserts that

> [o]n May 22, 2020, [Plaintiff] emailed copies of the civil cover sheet, summons naming [Defendant Mohammed], and first amended complaint to [Defendant Mohammed] at each of these email addresses. One (sent to the yahoo account) bounced back as undeliverable, but the other two did not, and were presumably received.

*Id*. at 5.

Plaintiff contends that "[t]he Court is well within its discretion to approve [Plaintiff]'s prior deliveries of the summons and first amended complaint to [Defendant Mohammed] by certified mail and email at the addresses [Defendant Mohammed]'s own agent, [Defendant] Zia, gave to [Plaintiff] in March of this year." *Id*. at 8.  Plaintiff asserts that it "has exhausted all other means of trying to serve an elusive defendant who departed the U.S. in order to evade service in the first place." *Id*.  Plaintiff asserts that "[i]t searched databases, it investigated an address in Miami which housed [Defendant Mohammed]'s international courier, it spoke to a lawyer with whom [Defendant Mohammed] had consulted but who did not have authority to accept service." *Id*. at 7.

Plaintiff bears the burden of effectuating proof of service. *See Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 538

(9th Cir. 1986). To meet the due process requirement, "the method of service crafted by the district court must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002) (internal quotation marks and citation omitted).

Federal Rule of Civil Procedure 4(f) states that

> (f) Serving an Individual in a Foreign Country. Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served at a place not within any judicial district of the United States:
> > (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
> > (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
> > > (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
> > > (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
> > > (C) unless prohibited by the foreign country's law, by:
> > > > (i) delivering a copy of the summons and of the complaint to the individual personally; or
> > > > (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
> > (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f). Service under Rule 4(f)(3) must be (1) directed by the court; (2) not prohibited by international agreement; and (3) comport with constitutional notions of due process. *See Rio Props., Inc.*, 284 F.3d at 1014-16.

Plaintiff states in a sworn declaration that

> At the outset of this action in July 2019, our information was that [D]efendant … Mohammed, a wealthy Saudi national with homes in both

> California and Saudi Arabia, was in Las Vegas, Nevada, at the Wynn Las Vegas Resort, where he was ensconced in a luxury suite and playing baccarat during a planned extended stay. I enlisted the help of a paid private investigator, Cliff Petrovsky, in an effort to find out exactly where [Defendant Mohammed] was, so that he could be served with the summons and complaint at the Wynn. We also communicated privately with a Wynn Las Vegas employee with whom one of my clients had a preexisting relationship in an effort to learn the same information. Neither effort was successful, however, and, after a stay of several weeks, [Defendant Mohammed] departed the Wynn for Beverly Hills, where, I was told, [Defendant Mohammed] resides during a part of the year in a house supposedly owned by his family. Our efforts to learn the address of the house and to detect through public records searches ownership of a Beverly Hills residence by a person named Abdulaziz failed.

Lawton Decl. ¶ 2, ECF No. 19-2 at 2. Plaintiff further states that

> In October 2019, we learned that [Defendant Mohammed] had returned to Saudi Arabia during September, in order to be present for his children at the start of the primary school year (which begins during the first week of September). The source of this information was [Defendant Mohammed]'s own agent and close friend, [Defendant] Zia, who was not then a defendant (but who is a defendant now). I researched the means and practicality of attempting service of [Defendant Mohammed] in Saudi Arabia. My current information is that [Defendant Mohammed] is still there.

*Id.* ¶ 3, ECF No. 19-2 at 2. Plaintiff further states that

> On February 21, 2020, we mailed the civil cover sheet, summons and first amended complaint to [Defendant Mohammed] by certified mail, using a post office box which is associated with him in Saudi Arabia…. We did not receive a return receipt from [Defendant Mohammed] afterward.

*Id.* ¶ 4, ECF No. 19-2 at 3. Plaintiff further states that

> [O]n March 13, attorney Sloane privately provided us with this email address for [Defendant Mohammed]: abdulaziz.m.2@aramco.com. This email address supplemented two other email addresses given to [Plaintiff] by [Defendant] Zia, i.e., amohammed@gmail.com, and a.mohammed@yahoo.com[.] [sic]
>
> On May 22, 2020, I emailed copies of the civil cover sheet, summons naming [Defendant Mohammed], and first amended complaint to [Defendant Mohammed] at each of these email addresses. One (sent to the yahoo account)

>bounced back as undeliverable, but the other two did not, and were presumably received.

*Id*. ¶¶ 7-8, ECF No. 19-2 at 4.  Plaintiff further states that

>At this writing, I am confident that [Defendant Mohammed] is on full notice of this lawsuit through his former agent, [Defendant] Zia, with whom he was in regular contact in February and March of this year, through our email delivery to him of the summons and complaint, and through the certified mail sent to his P.O. Box in Saudi Arabia on February 21, 2020.

*Id*. ¶ 10, ECF No. 19-2 at 4.

The Court finds that Plaintiff has been reasonably diligent in seeking to locate Defendant Mohammed.  Plaintiff contends that Defendant Mohammed may be served "by other means not prohibited by international agreement, as the court orders."  ECF No. 19-1 at 6 (quoting Fed. R. Civ. P. 4(f)(3)).  Plaintiff asserts that "Saudi Arabia is not a party to the Hague Convention."  *Id*.  The Court finds that at this stage in the proceedings, the record does not adequately demonstrate that service on Defendant Mohammed via mail and email is "not prohibited by international agreement."  *Rio Props., Inc.*, 284 F.3d at 1014; *see e.g., Liberty Media Holdings, LLC v. Mar.*, No. 10cv1809 WQH (BLM), 2010 WL 5349853, at *2 (S.D. Cal. Dec. 20, 2010) ("Plaintiff states that it is 'unaware' of any international agreement which prohibit service via email on the Defendants.  The Court finds that at th[i]s [sic] stage in the proceedings, the record does not adequately demonstrate that service on Defendants via email is not prohibited by international agreement."); *see also Liberty Media Holdings, LLC v. Mar.*, No. 10cv1809 WQH (BLM), 2011 WL 197838, at *2 (S.D. Cal. Jan. 20, 2011) ("[T]he Court finds that Plaintiff has been reasonably diligent in seeking to locate the unserved Defendants, the record adequately demonstrates that service on Defendants Ryoichi Watanabe, Jason Phillips, David Smith, and Adrush Media by means of email is not prohibited by international agreement, and service by delivering the summons and Complaint to Defendants' last known valid email address is 'reasonably calculated, under all the circumstances, to apprise [Defendants] of the pendency of the action and afford them an opportunity to present their objections.'");

*United States v. Distribuidora Batiz CGH, S.A. de C.V.*, No. 07cv370-WQH-JMA, 2010 WL 4569895, at *4 (S.D. Cal. Nov. 3, 2010) ("[T]he Court finds that Plaintiff has been reasonably diligent in seeking to serve the thirteen unserved Defendants…. Plaintiff has demonstrated that service of the thirteen unserved Defendants by delivering the Summons and Complaint via certified mail to Parker, their attorney of record, is not prohibited by international agreement and is 'reasonably calculated, under all the circumstances, to apprise [Defendants] of the pendency of the action and afford them an opportunity to present their objections.'").

## III.  CONCLUSION

IT IS HEREBY ORDERED that the Motion for an Order Approving Alternative Means for Service of Summons as to Defendant Abdulaziz Bin Mohammed filed by Plaintiff Stemedica Cell Technologies, Inc. (ECF No. 19) is DENIED.

Dated: July 15, 2020

Hon. William Q. Hayes
United States District Court